NEW JERSEY TITLE GUARANTEE & TRUST CO. *v.*
McGRATH.

1. EVIDENCE—BILLS AND NOTES—BONA FIDES—HEARSAY.
    In an action by a bank on a note discounted by it, testimony by defendant as to what the payee told him, offered for the purpose of attacking the *bona fides* of plaintiff, *held*, inadmissible as hearsay.

2. BILLS AND NOTES—BONA FIDES—PROOF NECESSARY FOR PLAINTIFF TO RECOVER.
    In an action by a bank on a note discounted by it, where the defense was that the note was void because given for stock not approved by the securities commission, it was necessary, in order for plaintiff to recover, to show that, at the maturity of the note, the payee had exhausted the credit extended it by reason thereof.

3. EVIDENCE—BEST EVIDENCE RULE.
    The rule of best evidence does not apply to exclude parol evidence given by witnesses whose testimony is founded on their personal knowledge independent of the books.

4. SAME—TESTIMONY OF ONE HAVING KNOWLEDGE INDEPENDENT OF BOOKS ADMISSIBLE.
    Testimony by the vice-president of a bank, who had the matter in charge, and who had personal knowledge of the matters involved, that the payee of a note which the bank discounted had exhausted the credit extended, was admissible as against the objection that the bank's books were the best evidence.

5. TRIAL—RULING OF JUDGE REJECTED PROFFERED TESTIMONY.
    Where, when objection was made to testimony offered, the trial judge stated that he supposed the books would be the proper way to prove that, and, on being informed that the books were not available, did not overrule the objection, he is *held*, to have rejected the proffered testimony.

¹Evidence, 22 C. J. § 166; ²Bills and Notes, 8 C. J. § 1293; ³Evidence, 22 C. J. § 1240; ⁴Id., 22 C. J. § 1227; ⁵Trial, 38 Cyc. p. 1347.

Error to St. Clair; Law (Eugene F.), J. Submitted January 19, 1927. (Docket No. 120.) Decided June 10, 1927.

Assumpsit by the New Jersey Title Guarantee & Trust Company against Michael F. McGrath on a promissory note. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Hobart B. Hoyt* and *Percy J. Donovan,* for appellant.

*Monaghan, Crowley, Reilley & Kellogg,* for appellee.

SHARPE, C. J. In July, 1923, defendant purchased from the Lynch Construction Company, in the city of Detroit, some of its stock, agreeing to pay therefor $5,000. He paid cash $500, and gave his promissory note for $4,500. In September he made a payment of $1,000, giving a new note for $3,500. In December he made still another payment of $1,000, and gave his note for $2,500. This $2,500 note, as well as the preceding one, was discounted at plaintiff bank in New Jersey. The final note not being paid when due, this suit was begun to enforce its collection. Defendant pleaded the general issue and gave notice, in substance, that it would show that said note was given for stock of the Lynch Construction Company, in the city of Detroit, and at that time the stock had not been approved by the Michigan securities commission, and was, therefore, an unlawful and void sale, and further, that the plaintiff had knowledge that the sale was void, and that the plaintiff was not a *bona fide* holder for value before maturity.

On the trial it appeared that the stock of the Lynch Construction Company was not filed or approved by the Michigan securities commission prior to September 24, 1923. At the close of the proofs both parties requested a directed verdict. The trial court was of

the opinion that the plaintiff had failed to make out a case, and directed a verdict for defendant.

1. Plaintiff made proof of the ownership of the note; that it had not been paid, and it was offered and received in evidence. Defendant's counsel, for the purpose of attacking the *bona fides* of plaintiff, asked the defendant the following questions:

"*Q.* You say you had a talk with Mr. Lynch of the Lynch Construction Company with reference to this transaction?

"*A.* Yes.

"*Q.* Did Mr. Lynch inform you that the plaintiff in this case, the New Jersey Title Guarantee & Trust Company, were backing him in this proposition?

"*A.* Yes, sir.      (Objected to as incompetent and immaterial.)

"*The Court:* The testimony may stand.

"*Q.* Did he also tell you they were taking in the notes that they were procuring on the stock and backing them in the proposition?

"*A.* He said they were backing them in the proposition all the way through, and that he had a good—

"*Mr. Donovan:* I renew my objection as incompetent. How could that be binding on the plaintiff? Anything Mr. Lynch said to this witness would in no way be binding on the plaintiff, and I object to it for that reason.

"*The Court:* Objection is overruled."

We think this testimony was hearsay, and, therefore, incompetent. This statement was made by one who was not sworn, and was neither a party nor a witness. What Mr. Lynch had told defendant about certain acts and conduct of the plaintiff is clearly within the hearsay rule, and should have been excluded. *Merritt* v. *Stebbins*, 86 Mich. 342; *Greenman* v. *O'Riley*, 144 Mich. 539 (115 Am. St. Rep. 466).

2. Mr. Walter P. Gardner testified, as follows:

"I am vice-president of the New Jersey Title Guarantee & Trust Company of Jersey City. The note, Exhibit 1, is our property. We discounted it for the

payee, Lynch Construction Company, and gave them credit for the proceeds.

"*Q.* Did they subsequently exhaust the credit? (Objected to, as the books of the company would be the best evidence.)

"*Q.* State, if you know, whether or not they made withdrawals against this credit? (Same objections.)

"*The Court:* I suppose the books would be the proper way to prove that; they would be the better way, anyway.

"*Mr. Reilley:* We have the right to see the books; he cannot testify to the contents of a book; books or records.

"*The Court:* Have you any records here that will show?

"*A.* No, sir, I have no books of account. This was two years ago.

"*Q.* Did plaintiff ever receive the money on that note?

"*A.* The plaintiff has never received the money on that note from anyone, nor any interest on it."

If plaintiff discounted the note and credited the Lynch Construction Company's account with the proceeds, it was necessary, in view of the defense, for plaintiff to show that the Lynch Construction Company had exhausted that credit at the maturity of the note. *Central Savings Bank* v. *Stotter,* 207 Mich. 329; *Republic National Bank* v. *Bobo,* 227 Mich. 6; 3 R. C. L. p. 1055.

It being necessary for plaintiff to show the credit had been exhausted at the maturity of the note, in order to be a *bona fide* holder for value, the question arises whether the manner in which plaintiff sought to show it was competent. The witness testified he was vice-president of plaintiff. He testified fully with reference to discounting the note, showed himself familiar with the affairs of plaintiff bank, and especially with the dealings of the Lynch Construction Company, and said:

"I had no knowledge of the fact that the Lynch Construction Company had sold stock in their cor-

poration to Mr. McGrath, the defendant.    No one in my concern knew about it.    I am the only one that would know.    I did not know that this note had been given for the purchase of stock in the Lynch Construction Company.    I did not, nor did my company, know anything about complying with the blue sky law of Michigan.    About this time the Lynch Construction Company was a customer of our bank, and we had occasion to discount notes for that concern—their own and others.    After September, 1923, we discounted notes for them in an increasing amount.    Later on we had no knowledge that there was anything improper in receiving the notes which had been offered to us by the Lynch Construction Company.    *    *    * We were not behind this proposition which is described here and would not tell any one that we were.    We never stated to Mr. Webster or Mr. Lynch we were behind the transaction and backing it, and we never authorized anyone to make this statement for us."

If the witness had information of the bank's affairs that the testimony indicates, and could speak from his own knowledge, he had a right to answer the two questions which were propounded to him.    The mere fact that the information was also contained in plaintiff's books of account would not bar the right of the witness to testify to facts which he knew of his own knowledge.

"The rule does not apply to exclude parol evidence given by witnesses whose testimony is founded on their personal knowledge independent of the books."    22 C. J. p. 990.

See, also, *Paperno* v. *Engineering Co.*, 202 Mich. 257.

"Where the matter to be proved is a substantive fact which exists independently of any writing, although evidenced thereby, and which can be as fully and satisfactorily established by parol as by written evidence, then both classes of evidence are primary and independent, and parol evidence may be admitted regardless of the writing."    22 C. J. pp. 983, 984.

See, also, *Pearson* v. *Wallace,* 203 Mich. 622.

Defendant seeks to avoid the•effect of this view by claiming that the trial court did not rule on defendant's objections to the questions, and cites the following cases:  *Eberts* v. *Mt. Clemens Sugar Co.*, 182 Mich. 473; *Henderson* v. *Agon*, 148 Mich. 252; *Zeilman* v. *Fry*, 213 Mich. 508.

The first case cited had reference to the argument of counsel to the jury.  The second had reference to the refusal of the court to admit certain testimony, where no exception was taken and where no offer was made as to what the testimony would have been if admitted.  The third has reference to checks which were not offered in evidence.

Plaintiff's question to the witness clearly indicated what the testimony was that he was seeking to obtain. The question was repeated in another form, and, when counsel for defendant objected, it was suggested by the court that the proper way to prove the fact was by the books, and he asked if counsel had the books there. It was evidently the intention of the court to reject the proffered proofs; if it had not been, when counsel advised him that he did not have the books in Michigan, he would have overruled the objections and allowed plaintiff to proceed.  It was a clear case of rejecting proffered testimony, which was not only material but very important.  Had counsel asked these questions again, after what the trial court had said, he would have been subject to a reprimand by the court, unless the trial court had been excessively courteous.

For the errors pointed out, the judgment of the trial court must be reversed, and a new trial ordered, with costs of this court to plaintiff.

Snow, Steere, Fellows, Wiest, Clark, and McDonald, JJ., concurred.  Bird, J., did not sit.